The defendant was indicted and convicted for the murder of Dan Edward Green by shooting him with a shotgun. Sentence was life imprisonment under the Habitual Felony Offender Act.
 I
The defendant filed a motion to quash the indictment and the jury venire contending that the selection of prospective jurors from the voter registration list excluded a substantial segment of the qualified population from the opportunity to be considered for jury service. This motion was properly overruled.
The motion to quash was filed too late. It was filed after the defendant had pled not guilty to the indictment and after the extended time for filing any special pleas or motions had expired. No excuse was offered for the delay and the motion was untimely. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157,7 L.Ed.2d 114 (1961); Owen v. State, 255 Ala. 354, 51 So.2d 541
(1951). But compare Thomas v. State, 277 Ala. 570,173 So.2d 111 (1965).
The defendant totally failed to meet the burden of showing that the selection process systematically and arbitrarily excluded a cognizable class from jury service. United States v.Arlt, 567 F.2d 1295 (5th Cir. 1978). A defendant may demonstrate a violation of his Sixth Amendment right to trial by an impartial jury by proving that the jury selected did not represent a fair cross-section of the community. Duren v.Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979);Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887,41 L.Ed.2d 590 (1974).
 "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren, 99 S.Ct. at 668.
The proof offered by the defendant totally failed to satisfy any of these elements.
In support of his motion to quash, the defendant offered the same evidence submitted in the case of James Earl Sanders v.State, Ala.Cr.App., 6 Div. 657 (submitted to this court on July 13, 1982). The trial judge took judicial notice of the fact that "the voters' list of Tuscaloosa County constitutes the source for the juror's list."
In Sanders, the Director of Research Planning in the Municipal Courts, Administrative Office of Courts, testified that the voter registration list was used exclusively to select the prospective jurors in Tuscaloosa County. He presented statistics which were based "not on the new census, but on the census projected by the University of Alabama." The witness testified that "the (jury) box you have now are not those statistics." He also stated that the prosecutor was "correct" when he stated that those "statistics, then, do not in anyway relate or show what is in the box now." After this showing the trial court judge granted the State's motion to exclude the statistics. No attempt was made to show how the statistics were related to the jury venire in the Sanders case or in this case.
Since the defendant's argument is not supported by facts, it appears that he is arguing that the exclusive use of the voter registration list to select prospective jurors will always, as a matter of law, result in a violation of the fair-cross-section requirement. However, this view is not supported by the substantial number of cases collected on this very issue in Anno. 80 A.L.R.3d 869 (1977). "The contention that the use of the list of registered voters produced a jury panel generally nonrepresentative of a cross-section of the community has almost always been rejected, with the courts determining that it would be difficult to find a source more representative of the community." 80 A.L.R.3d at 873. *Page 650 
The defendant relies on State ex rel. Gregg v. Maples,286 Ala. 274, 239 So.2d 198 (1970), to support his contention. There it was held that the method of selecting and compiling the jury roll of Madison County, making sole use of the voter registration list, was "fraud in law." Maples held that "a system of jury selection which excludes persons who are not registered voters would not substantially comply with statutory requirements (Alabama Code 1940, Title 30, Section 21) that the jury roll contain the names of all citizens living in the county who are generally reputed to be honest, intelligent and esteemed in the community for integrity, good character and sound judgment." Hammond v. State, 354 So.2d 280, 285
(Ala.Cr.App.), cert. quashed, 354 So.2d 294 (Ala. 1977).
The particular language of Maples upon which the defendant predicates his argument is as follows:
 "Unregistered voters would seem, in the absence of statistics to the contrary, to comprise a substantial segment of the population of any area. And such a system of jury selection which omitted them would not substantially comply with the statutes in Alabama, nor would such a procedure insure the jury commission as complete a list as possible." Maples, 286 Ala. at 280, 239 So.2d 198.
The holding of Maples must be limited to the facts of that case and must be viewed within the framework of the particular statutes involved. This was recognized in Hammond, 354 So.2d at 287, where this Court stated, "If the application of `fraud in law' as expressed in Gregg v. Maples, is extended to challenges of grand juries by motions to quash, it must be done by the Supreme Court, not by this Court." Certiorari was quashed inHammond, the Supreme Court refusing to make such an extension.
"There is a presumption that no legal fraud exists in the system used for the selection of jurors, in the absence of proof to the contrary, or an offer of such proof." Nixon v.State, 291 Ala. 657, 658, 286 So.2d 315 (1973). The burden of showing fraud in the selection of potential jurors is on the accused and there is a presumption that no legal fraud exists.Oyarzun v. Pittman, 367 So.2d 574, 580 (Ala.Cr.App. 1978), cert. denied, 367 So.2d 584 (Ala. 1979).
Maples dealt with the application of a statute that charged the jury commission with "the duty of seeing that the name of every person possessing the qualifications prescribed in this article to serve as juror and not exempted by law from jury duty is placed on the jury roll and in the jury box." Alabama Code 1940, Title 30, Section 24; Alabama Code 1975, Section12-16-41.
That statute and several others related to it were specifically repealed by Acts 1978, No. 594, p. 712, effective April 27, 1978. The policy of the new juror qualification and selection act is stated in Alabama Code 1975, Section 12-16-55.
 "It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose."
Although the old law (Section 12-16-41) required the master list to contain the name of every qualified person who was not exempted by law, the new law (Section 12-16-57) only requires the jury commission to "compile and maintain an alphabetical master list of all persons in the county who may be called for jury duty." This section specifically states that the master list "may include all registered voters, persons holding drivers' licenses and registering motor vehicles, and may include other lists, . . . which will include persons whose listing will foster the policy and protect the rights provided in Sections 12-16-55 (Declaration of Policy) and 12-16-56
(Discrimination Prohibited)."
Our judgment that the language and holding of Maples should not be interpreted as meaning that the practice of selecting prospective jurors exclusively from the list of registered voters constitutes legal fraud *Page 651 
or results in the unconstitutional exclusion of a segment of the community as a matter of law finds support elsewhere. SeeHammond.
Other courts have determined that the whole body of nonvoters does not constitute an identifiable, cognizable group. Baum v.State, 264 Ind. 421, 345 N.E.2d 831 (1976); Commonwealth v.Fisher, 447 Pa. 405, 290 A.2d 262 (1972). "(P)ersons choosing not to register to vote do not constitute a cognizable class capable of systematic exclusion from juries." United States v.Horton, 526 F.2d 884, 889 (5th Cir.), cert. denied,429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).
 "Use of such lists as the sole source of names for jury duty is constitutionally permissible unless this system results in the systematic exclusion of a `cognizable group or class of qualified citizens.' Grimes v. United States, 5 Cir., 1968, 391 F.2d 709, cert. denied, 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96; Rabinowitz v. United States, 5 Cir., 1966, 366 F.2d 34. This Court and others have held that those who do not choose to register to vote cannot be considered a `cognizable group.' Grimes v. United States, supra; United States v. Caci, 2 Cir., 1968, 401 F.2d 664, 671; United States v. Kelly, 2 Cir., 1965, 349 F.2d 720, 778, cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544; Gorin v. United States, 1 Cir., 1963, 313 F.2d 641, 644, cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052." Camp v. United States, 413 F.2d 419, 421 (5th Cir. 1969).
As previously noted, courts have repeatedly upheld as constitutional the use of voter registration lists as the exclusive source of prospective jurors against the contention that their use discriminated against identifiable racial, social or economic groups. Anno. 80 A.L.R.3d 869. The exclusive use of the list is in compliance with the Federal Jury Selection Act.
 "It has also been expressly held or recognized that the use of either the voter registration lists or the lists of actual voters as the sole source of names of prospective jurors is not in violation of, but is in compliance with, the requirement of the (Federal Jury Selection and Service) Act, and neither is it constitutionally invalid unless there is discrimination in the compilation of such lists; and that the selection at random of prospective jurors' names from such lists complies with the Act and precludes discrimination against, or systematic exclusion of, any particular group otherwise eligible for jury service." Anno. 17 A.L.R. Fed. 590, 598-99 (1973).
The motion to quash the indictment and the jury venire was properly overruled because the motion was untimely, because the defendant failed to sustain his burden of proof, because nonvoters do not constitute a cognizable group, and because the use of the voter registration list as the sole and exclusive source of prospective jurors does not automatically constitute "fraud in law" or constitute a prima facie violation of the fair-cross-section requirement. See Lopez v. State,415 So.2d 1204 (Ala.Cr.App., 1982), cert. denied, (Ala. June 25, 1982), where we held that the exclusive use of the drivers' license list in selecting prospective jurors in Etowah County was not improper.
 "The law in Alabama does not require, literally, that every qualified person's name be placed on the rolls or in the box. Mitchell v. Johnson, 250 F. Supp. 117
(M.D.Ala. 1966). Failure to include every qualified person on the jury roll is not a ground to quash an indictment or venire, absent fraud or purposeful discrimination. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)." Lopez.
 II
The defendant maintains that the trial court committed error in refusing to charge the jury on criminally negligent homicide as a lesser included offense of murder. We disagree and concur with the comments of the trial judge on this issue.
 "THE COURT: Well, Alabama Code, Section 13A-1-9 (b) says that a Court shall not charge a jury with respect to an included offense unless there's a rational basis for a verdict convicting the Defendant *Page 652 
of the included offense. And if there's a rational basis for charging on Criminally Negligent Homicide in this case then they ought to repeal that section of the Code, because I just cannot understand how a jury could rationally return a verdict and I don't understand how a judge could rationally instruct a jury on Criminally Negligent Homicide under the facts of this case. There is absolutely no evidence of a negligent act. He either shot him or he didn't shoot him. And the defense was alibi in this case."
A court may properly refuse to charge on lesser included offenses when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense. Chavers v. State, 361 So.2d 1106 (Ala. 1978). There is no rational basis for a verdict convicting the defendant of criminally negligent homicide in this case. Thus, the court's oral charge was proper. Alabama Code 1975, Section13A-1-9 (b).
"A defendant is likewise not entitled to charges on lesser included offenses when he denied committing the crime itself."Williams v. State, 377 So.2d 634, 637 (Ala.Cr.App.), cert. denied, Ex parte Williams, 377 So.2d 639 (Ala. 1979).
Also the requested charge on the lesser included offense was properly denied because it was not hypothesized on a "belief from the evidence." Hudson v. State, 335 So.2d 208
(Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala. 1976).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.